UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In re:                                          Chapter 11 Bankruptcy

Wagstaff Minnesota, Inc., *et al.*,             Bankruptcy No. 11-43073

           Debtors.                             Jointly Administered

---

KFC Corporation,

           Appellant,

v.                                              Civil No. 11-2450 (JNE/JJG)
                                                ORDER
Wagstaff Minnesota, Inc. *et al.*,
Official Committee of Unsecured
Creditors of Wagstaff Minnesota,
Inc. *et al.*, General Electric Capital
Corporation *et al.*,

           Appellees.

---

Robert C. Goodrich, Jr., Esq., and Erika R. Barnes, Esq., Stites & Harbison PLLC, and Kenneth Corey-Edstrom, Esq., Larkin Hoffman Daly & Lindgren Ltd., appeared for Appellant.

Scott F. Gautier, Esq., Peitzman, Weg & Kempinsky LLP, and Sarah M. Gibbs, Esq., Fredrikson & Byron, PA, appeared for Appellees Wagstaff Minnesota, Inc. *et al.*

Deborah C. Swenson, Esq., Lommen, Abdo, Cole, King & Stageberg, PA, appeared for Appellees Official Committee of Unsecured Creditors of Wagstaff Minnesota, Inc. *et al.*

Susan G. Boswell, Esq., Quarles & Brady LLP, and Ralph V. Mitchell, Jr., Esq., Lapp, Libra, Thomson, Stoebner & Pusch, Chartered, appeared for Appellees General Electric Capital Corporation *et al.*

---

KFC Corporation (KFCC) appeals a final order of the United States Bankruptcy Court for the District of Minnesota. Appellees (Debtors) join together in opposition. For the reasons set forth below, the Court reverses the decision of the bankruptcy court.

## I.     BACKGROUND

Debtors own and operate 77 restaurants (Outlets) as KFCC franchisees. Debtors defaulted on their original franchise agreements, KFCC terminated the agreements, and the parties negotiated and executed a new set of documents that form the basis of the dispute on appeal. Specifically, the parties disagree as to whether this set of documents should be considered one indivisible contract.

Debtors defaulted on the original franchise agreements at various times prior to October 2009. On June 2, 2010, KFCC and Debtors entered into a Prenegotiation and Forbearance Agreement that provided for a time in which to negotiate reinstatement of the franchise agreements for the limited purpose of the sale of the Outlets. On August 13, 2010, the parties signed a Reinstatement Agreement, an Addendum to Reinstatement Agreement, and a Letter Agreement. The Addendum to Reinstatement Agreement provides that the Kentucky Fried Chicken Franchise Agreement signed pursuant to the Reinstatement Agreement will expire on August 1, 2011. On November 5, 2010, the parties signed new Kentucky Fried Chicken Franchise Agreements effective on August 13, 2010—the same day as the other reinstatement documents. The parties provided the Court with a sample set of these four documents for one of the Outlets. In each new Kentucky Fried Chicken Franchise Agreement, the phrase indicating that the expiration date was to be twenty years from the date of execution is crossed out and replaced with the date that each Outlet's original franchise agreement would have expired. For

example, the sample New Franchise Agreement provided to the Court has an expiration date of June 6, 2022.

The four documents discussed below were executed for each individual Outlet. All of the documents have the same effective date of August 13, 2010.

Reinstatement Agreement: This document requires Debtors to, among other things, upgrade and remodel the Outlets, sign new franchise and advertising agreements, be current on financial obligations to KFCC, and release KFCC from all claims. The Reinstatement Agreement contains a merger clause prohibiting merger into "any Franchise Agreement(s)."

Addendum to Reinstatement Agreement (Addendum): The Addendum requires Debtors to submit an offer for sale and a proposed buyer for the Outlets to KFCC by May 1, 2011 and to close on those sales by August 1, 2011. It sets the expiration date for the New Franchise Agreements as August 1, 2011, subject to prior transfer. The Addendum states that any conflict between the franchise agreement and the Reinstatement Agreement should be resolved in favor of the Addendum.

Letter Agreement: The Letter Agreement states that Debtors have until May 1, 2011 to submit purchase contracts for each Outlet and until August 1, 2011 to close on those sales. It requires lump sum payments for past due royalties and advertising costs. Debtors are required to sign promissory notes for past due royalties. The Letter Agreement also requires Debtors to complete maintenance and remodeling projects.

Kentucky Fried Chicken Franchise Agreement (New Franchise Agreement): This agreement provides for the grant of a license to use the KFCC trademarks. Although this document dated November 5, 2010 is not actually entitled as such, the parties refer to it as the "New Franchise Agreement" and the Court will do the same. But the Court notes that in the

upper right-hand corner of the document under the label "reference" it says

"REINSTATEMENT" rather than "New." The New Franchise Agreements are identical to the

original franchise agreements between the parties. The New Franchise Agreements contain the

same expiration dates that were in each Outlet's original franchise agreement.

Debtors filed for Chapter 11 bankruptcy on April 30, 2011. On July 27, 2011, the

bankruptcy court held an expedited hearing, determined that the documents were two separate

agreements, and granted Debtors' motion under bankruptcy law to reject the Reinstatement

Agreement, Addendum, and Letter Agreement. The bankruptcy court's order left the New

Franchise Agreement in effect, thereby allowing Debtors to continue operating the Outlets with

the potential to assume the New Franchise Agreement in later bankruptcy court proceedings. In

an oral statement in open court, the bankruptcy court concluded that the documents span

different subject matters and have different purposes. (Bankr. Proceedings Tr. 52:21-53:15, 57:7-

16, 59:9-19, July 27, 2011) The bankruptcy court also noted that the presence of an integration

clause and assignability provision in the New Franchise Agreement and a merger clause in the

Reinstatement Agreement indicate the documents are separate contracts. (Bankr. Proceedings Tr.

55:23-56:11, 58:4-18, 58:21-59:9) It could not reconcile the different termination dates if the

documents were viewed as one agreement. (Bankr. Proceedings Tr. 57:17-58:1) The bankruptcy

court ruled that there were two separate agreements and granted Debtors' motion to reject the

Reinstatement Agreement and its supporting documents.

## II.     DISCUSSION

On appeal, KFCC argues that the bankruptcy court erred in treating the Reinstatement

Agreement and its supporting documents as separate from the New Franchise Agreement and in

allowing Debtors to reject only the former. This Court sits in review of bankruptcy court

decisions pursuant to 28 U.S.C. § 158(a) (2006). The Court reviews the bankruptcy court's conclusions of law de novo and its factual findings for clear error. *Dapec, Inc. v. Small Bus. Admin. (In re MBA Poultry, LLC)*, 291 F.3d 528, 533 (8th Cir. 2002). Interpreting the plain language of a contract and determining whether there is ambiguity are both questions of law, but weighing extrinsic evidence, in the face of an ambiguity in the contractual language, is a factual inquiry. *Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.)*, 262 F.3d 725, 731 (8th Cir. 2001) (determining whether a contract is ambiguous is a question of law that requires de novo review, but reviewing the meaning of an ambiguous contract for clear error); *In re CP Holdings, Inc.*, 332 B.R. 380, 385 (W.D. Mo. 2005) (stating that the standard of review for contract construction is de novo and that the standard of review of a bankruptcy court's reliance on extrinsic evidence is clearly erroneous). Determinations involving mixed questions of fact and law are also reviewed de novo.[1] *Neal v. Kansas City Star (In re Neal)*, 461 F.3d 1048, 1052 (8th Cir. 2006). Thus, the underlying nature of the issues presented dictates the correct standard of review.

The bankruptcy court did not rely on extrinsic evidence in reaching its decision. It did not conduct an evidentiary hearing or expressly identify any ambiguities in the agreements. Rather, the bankruptcy court based its reasoning on the plain language of the contracts, the purpose of the documents, and practical considerations. The bankruptcy court did not make factual findings, and therefore, this Court reviews the decision de novo.

---

[1]   Debtors claim the standard of review for mixed questions of law and fact is clearly erroneous, citing *E.S. v. Independent School District, No. 196 Rosemount-Apple Valley*, 135 F.3d 566, 569 (8th Cir. 1998). The *E.S.* case is not an appeal from a bankruptcy court decision. Instead, it involves special deference to administrative decisions under the Individuals with Disabilities Education Act, 20 U.S.C. § 1415 (2006). Thus, the Court does not find the cited authority binding or even informative on the standard of review for this appeal.

Under Bankruptcy Code section 365(a), a trustee may assume or reject any executory contract, subject to the court's approval. 11 U.S.C. § 365(a) (2006). It is undisputed that the Reinstatement Agreements at issue here are executory contracts. Rejection of a contract frees the debtor from the obligation to perform and provides the non-debtor party with only an unsecured claim for any damages due to breach of contract. *Id.* § 365(g). The purpose of allowing a debtor to reject some contracts is to "release the debtor's estate from burdensome obligations that can impede a successful reorganization." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984). A debtor cannot assume the beneficial aspects of a contract while rejecting the burdensome parts— the contract must be accepted or rejected as a whole. *United Air Lines, Inc. v. U.S. Bank Trust Nat'l Ass'n as Tr. (In re UAL Corp.)*, 346 B.R. 456, 467 (Bankr. N.D. Ill. 2006). Two or more contracts that are "essentially inseparable" should be viewed as a single indivisible agreement and assumed or rejected in their entirety. *In re Karfakis*, 162 B.R. 719, 725 (Bankr. E.D. Pa. 1993).

Contract interpretation is a matter of state law. *Id.* The parties agree that Kentucky law applies to issues of contract interpretation in this case. Determining whether several documents form one indivisible contract is a matter of contract interpretation governed by state law. *In re Pollock*, 139 B.R. 938, 940 (B.A.P. 9th Cir. 1992). The primary job of the Court in interpreting a contract is to ascertain and effectuate the intent of the parties. *Mitchell v. S. Ry. Co.*, 74 S.W. 216, 217 (Ky. 1903). The Court begins this inquiry by examining the written agreement for evidence of the parties' intent. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002). If the parties' intent is unclear from the writing, then the Court must look to extrinsic evidence. *Id.* Here, the Court is asked to determine whether the New Franchise Agreement is part of the same contract as the Reinstatement Agreement, Addendum, and Letter

6

Agreement. "In determining whether a contract is severable, the intention of the parties is a controlling factor." *Knight v. Hamilton*, 233 S.W.2d 969, 971 (Ky. 1950).[2] In considering the parties' intent, the Court looks to their purpose at the time of contract execution. *Lockwood's Trustee v. Lockwood*, 62 S.W.2d 1053, 1054 (Ky. 1933). "Equitable considerations will prevail against a mechanistic approach as to whether the contract is divisible or indivisible and thus enforceable." *Hodges v. Todd*, 698 S.W.2d 317, 320 (Ky. Ct. App. 1985). In addition to the intent of the parties, courts considering the divisibility of a contract look at "the objects to be attained and the common sense of the situation." *Bus. Men's Assur. Co. of Am. v. Eades*, 161 S.W.2d 920, 922 (Ky. 1942). If the parties' intent cannot be derived from the face of the documents, the Court must engage in a fact intensive inquiry considering a variety of factors.

### A.     Plain language of the agreements

Under Kentucky law, a contract is given its plain meaning where it is not ambiguous. *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000) ("Extrinsic evidence cannot be admitted to vary the terms of a written instrument in the absence of an ambiguous deed."); *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966) ("In the absence of ambiguity a written instrument will be enforced strictly according to its terms."). When determining the parties' intent from the terms of the contract itself, the "entire context of the agreement" must be taken into account. *Veech v. Deposit Bank of Shelbyville*, 128 S.W.2d 907, 911 (Ky. 1939); *see also Lexington & B.S. Ry. Co. v. Moore*, 131 S.W. 257, 258 (Ky. 1910) (stating "in aid of what the parties intended it is admissible, in the construction of many contracts that are on their face free

---

[2]     Most of the cases relied on by the parties to define Kentucky law involve a single contract and the severability of provisions within that contract. Although this case involves the severability of an entirely separate document, the same contract principles appear to apply under Kentucky law. *See Knight*, 233 S.W.2d at 970 (interpreting a deed and a contract and citing to *Bus. Men's Assurance Co. of Am. v. Eades*, 161 S.W.2d 920, 922 (Ky. 1942), for relevant contract interpretation principles where that case involves the severability of a single document).

from ambiguity, to consider their situation and the circumstances and conditions surrounding them at the time the contract was entered into"). In this case, where four documents are alleged to constitute one contract, the Court must consider the plain language and context of all four agreements in concert to determine the parties' intent. "[A]greements in writing, executed at the same time between the same parties and relating to the same subject-matter, will be considered to make one contract for the purpose of determining the meaning of the parties, though the agreements are contained in several instruments, and though they do not bear the same date, nor be absolutely contemporaneous in execution." *Macpherson v. Bacon's Ex'r*, 203 S.W. 744, 746 (Ky. 1918); *see also In re Indep. Am. Real Estate, Inc.*, 146 B.R. 546, 551 (Bankr. N.D. Tex. 1992) (considering that construction agreements were executed at substantially the same time and by the same parties in determining that the agreements should be read as one instrument); *Fid. & Columbia Trust Co. v. Schmidt*, 53 S.W.2d 713, 718 (Ky. 1932) ("[T]wo or more written instruments between the same parties, executed simultaneously, referring to each other, and concerning a single transaction, must be construed together as constituting the contract between the parties."). Here, with respect to each Outlet, the four written agreements are between the same parties and bear the same effective date. The bankruptcy court concluded, however, that they do not relate to the same subject matter.

KFCC argues that the four documents at issue refer to the same subject matter—Debtors' continuing operation of the Outlets pending Debtors' sale of the Outlets. Debtors argue that the subject matter of the agreements should be viewed more narrowly. Namely, that the New Franchise Agreement concerns the operation of and license for the Outlets, whereas the Reinstatement Agreement, Addendum, and Letter Agreement relate to Debtors' financial and sale obligations to KFCC. These agreements must be examined in the context surrounding their

execution. *See Veech*, 128 S.W.2d at 911. When Debtors and KFCC executed the Reinstatement Agreements, Debtors had breached, and KFCC had terminated, the original franchise agreements. Consequently, the Reinstatement Agreements were necessary to give Debtors the right to operate the Outlets. Likewise, the New Franchise Agreements were key assets for Debtors in marketing and completing the sales contemplated in the Reinstatement Agreements and their supporting documents. Debtors would not have been able to continue operations or sell the Outlets without the agreements. Thus, these documents all relate to the continuing operation of the Outlets by Debtors pending Debtors' sale of the Outlets. The Court declines to accept the narrow view of subject matter proffered by Debtors and adopted by the bankruptcy court.

The Court now turns to whether the parties intended to create one or more than one contract at the time of execution. The intent of the contracting parties is stated in the plain language of the Addendum. The first sentence states: "Franchisee has voluntarily entered into this Reinstatement Agreement for the special and limited purpose of selling the KFC Outlet located at [specific location]." This statement could not be plainer as to the parties' intent that the transaction was for the purpose of selling the Outlets. Although discussing several clauses in the agreements, it is not clear whether the bankruptcy court considered this most straightforward statement of the parties' intent located in the contract itself. Debtors argue that the statement of intent in the Addendum only relates to the intent behind the Reinstatement Agreement and not the intent of the New Franchise Agreement. The plain text of the documents, however, contains several other indications that corroborate the parties' intent, as it is plainly stated in the Addendum, to form one contract.

### 1.      Language of incorporation and cross-references

KFCC argues that the New Franchise Agreement is incorporated into the Reinstatement

Agreement by reference and that incorporation proves the documents are one indivisible

contract. Debtors counter that the incorporation language is merely for specific identification of

the New Franchise Agreement rather than to make its terms part of the Reinstatement

Agreement. The Reinstatement Agreement requires Debtors to:

> Execute the following instruments: 1. "Kentucky Fried Chicken
> Franchise Agreement" of KFC Corporation [Current Form 76(5P)],
> incorporated herein by reference for all purposes as though set
> forth verbatim, the term of such agreement instead being for the
> remainder of the initial term of the Franchise Agreement, but no
> Initial Franchise Fee shall be charged.

(Reinstatement Agreement III.C, ECF No. 1 Doc. 15 at 51) Where a document is incorporated

into a contract by reference, the instruments are treated as one. *Knight*, 233 S.W.2d at 970. The

clause here uses the word "incorporated" and the phrase "as though set forth verbatim." These

words should be given their plain meaning. The incorporation clause explicitly references the

changed date of expiration. This indicates that the rest of the provisions in the New Franchise

Agreement are incorporated as they are written. If the clause was merely identifying the New

Franchise Agreement, there would be no need to mention specific provisions therein. The

incorporation language provides a strong indication on the face of the contract that the

agreements were intended to be one contract.

Furthermore, the Reinstatement Agreement cross-references the New Franchise

Agreement. The incorporation clause in the Reinstatement Agreement is prefaced with the

command that Debtors "execute" the New Franchise Agreement. In addition to the reality that

Debtors would have no franchise agreement without this directive in the Reinstatement

Agreement, it indicates that the New Franchise Agreement is an essential part—indeed, a

10

requirement—of the Reinstatement Agreement. Additionally, the Reinstatement Agreement uses

the phrase "any Franchise Agreement(s) executed pursuant hereto" in several places. That the

New Franchise Agreement is executed pursuant to the Reinstatement Agreement does not prove

that the documents are one. Nevertheless, this language makes clear that the New Franchise

Agreement is strongly linked to the Reinstatement Agreement. Debtors assert that the absence of

any reference to the Reinstatement Agreement or Letter Agreement in the New Franchise

Agreement indicates that the parties did not intend them to be part of one contract. Although

Debtors are correct that a cross-reference in the New Franchise Agreement to the Reinstatement

Agreement would be a strong indication that they were one, the absence of such a reference does

not conclusively prove they are separate agreements. *See Bailey v. R.R. Co.*, 84 U.S. (17 Wall.)

96, 108 (1872) (stating "nor is it necessary that the instruments should in terms refer to each

other if in point of fact they are parts of a single transaction").[3] The references to the New

Franchise Agreement in the Reinstatement Agreement provide yet another indication that these

documents were intended to function as one contract.

### 2.      Integration and conflict clauses in the agreements

Both the New Franchise Agreement and the Reinstatement Agreement contain integration

clauses that Debtors argue are in conflict with each other. The New Franchise Agreement states

in relevant part:

> Scope of Agreement, Changes, Consents, Etc. This Agreement
> constitutes the entire understanding and agreement of the parties
> concerning the Outlet and supersedes all prior and
> contemporaneous understandings and agreements of the parties,

---

[3]      There is no indication that Kentucky deviates from general rules of construction. *See* 11
Richard A. Lord, *Williston on Contracts* § 30:26 (4th ed. 1999) ("[I]nstruments executed at the
same time, by the same contracting parties, for the same purpose, and in the course of the same
transaction will be considered and construed together as one contract or instrument, even though
they do not in terms refer to each other." (footnotes omitted)).

> whether oral or written, pertaining to the Outlet, except for any
> express obligations of the Franchisee under the franchise option
> agreement for the Outlet and except for any written "master"
> agreement that may be in force between KFC and the Franchisee.

(New Franchise Agreement section 20.5, ECF No. 1 Doc. 15 at 35) The Reinstatement

Agreement provides:

> Entire Agreement. This Agreement and the agreements executed
> pursuant hereto supersede any and all other oral and written
> agreements between the parties hereto with respect to the subject
> matter of this Agreement and contain all of the covenants and
> agreements between the said parties with respect to said matter.
> Franchisee acknowledges that, except as set forth herein, or in the
> agreements executed pursuant hereto, neither KFC nor any one on
> behalf of KFC has made any representations, inducements,
> promises or agreements, orally or otherwise, respecting the subject
> matter of this Agreement, which are not embodied herein.

(Reinstatement Agreement part VII.G, ECF No. 1 Doc. 15 at 54) Debtors argue that these

clauses signify that the agreements are separate because they cannot be reconciled if the

agreements are interpreted as one contract. Debtors point out that the integration clause in the

New Franchise Agreement is very broad as it "supersedes all prior and contemporaneous

understandings and agreements of the parties," and it would supersede the Reinstatement

Agreement entirely. The bankruptcy court agreed, concluded that the integration clause in the

New Franchise Agreement controls, and stated that the comparable clause in the Reinstatement

Agreement only spoke to the parol evidence rule.

KFCC argues that the language of the integration clause in the Reinstatement Agreement

expressly includes the New Franchise Agreement. It includes the phrase "and the agreements

executed pursuant hereto." KFCC explains that, because the New Franchise Agreement is

pursuant to the Reinstatement Agreement, the documents are part of one agreement such that the

integration clauses are not in conflict. Debtors counter that the mere mention of another

agreement in an integration clause does not mean the documents are merged. The purpose of the integration clause in the Reinstatement Agreement, as the bankruptcy court concluded and as is common in contract practice, could well have been to prevent parol evidence rather than to explicitly integrate the documents. But the reference to the contemplated New Franchise Agreement certainly provides an indication that the documents are parts of one contract. Furthermore, the integration clause in the New Franchise Agreement, upon which the bankruptcy court relied, is equally concerned with parol evidence. Both integration clauses are formulated as standard provisions to protect a contract from the admission of parol evidence. This, however, does not resolve the alleged conflict between the integration clauses in the agreements.

KFCC points to the Addendum, which states:

> Any conflict between the Franchise Agreement executed pursuant to Section III.C.1. of this Reinstatement Agreement and the Reinstatement Agreement as modified by this Addendum shall be resolved in favor of this Addendum.

(Addendum part IV, ECF No. 1 Doc. 15 at 66) KFCC argues that this conflict resolution clause requires any perceived conflict between the integration clause in the New Franchise Agreement and the integration clause in the Reinstatement Agreement to be resolved in favor of the Addendum. Debtors contend that the conflict provision in the Addendum is superfluous if the agreements are all part of the same contract—if they are one contract, then there can be no conflict. Because they are separate documents, irrespective of whether they are one contract, the potential for conflict exists. The language in the conflict clause specifically contemplates the New Franchise Agreements. The parties practiced careful contracting by including the conflict clause to avoid any unforeseen conflicts. To interpret the conflict clause in the Addendum in any other way would be to disregard the plain language of this precautionary provision.

### 3.      Merger clause in the Reinstatement Agreement

KFCC argues the bankruptcy court misconstrued the merger clause in the Reinstatement

Agreement. The merger clause provides: "This Agreement shall not be merged into any

Franchise Agreement(s) executed pursuant hereto." (Reinstatement Agreement part VII.J, ECF

No. 1 Doc. 15 at 54) KFCC asserts that the clause prevents extinguishment of the Reinstatement

Agreement by absorption into the New Franchise Agreement. Debtors contend that a merger

clause is the same as an integration clause, and the New Franchise Agreement and the

Reinstatement Agreement, therefore, explicitly cannot be one contract. "[T]he standard method

to integrate an agreement and thus to limit the relevance of surrounding circumstances is to

include a merger clause in the final writing." *A & A Mech., Inc. v. Thermal Equip. Sales, Inc*.,

998 S.W.2d 505, 510 (Ky. Ct. App. 1999); *see also Mountain After Hours Clinic v. Philips

Elecs. N. Am. Corp.*, No. 06-CV-465, 2007 WL 1200823, at *3 (E.D. Ky. 2007) (quoting *Sec.

Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 372 (6th Cir. 1999)) ("Merger clauses are

routinely incorporated in agreements in order to signal to the courts that the parties agree that the

contract is to be considered completely integrated.").

Although these cases demonstrate that a purpose of a merger clause is to integrate an

agreement for purposes of the parol evidence rule, that is not the only reason to include such a

clause. When viewed in the context of the Reinstatement Agreement as a whole, the merger

clause here was not intended to serve its usual function. *See Mitchell*, 74 S.W. at 217 ("It is not

proper, in construing a contract, for a court to seize upon some expression in it, and allow that to

control, in disregard of other provisions of it."). The Reinstatement Agreement contains what

was termed earlier the "integration clause," which states it constitutes the entire agreement of the

parties in order to prevent the introduction of extrinsic evidence. Then, several sections later the

"merger clause" appears. The merger clause would be superfluous if it had the same effect as the integration clause. *See City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986) ("Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible."). Additionally, it would create an internal inconsistency within the Reinstatement Agreement because the actual integration clause states that it includes "the agreements executed pursuant hereto"—namely the New Franchise Agreement. Reading the merger clause to then exclude the New Franchise Agreement creates an unnecessary conflict. *See Black Star Coal Corp. v. Napier*, 199 S.W.2d 449, 451 (Ky. 1947) ("If the contract contains inconsistent clauses, they should be reconciled if possible . . . ."); *see also Demczyk v. Mut. Life Ins. Co. of N.Y. (In re Graham Square, Inc.)*, 126 F.3d 823, 830 (6th Cir. 1997) ("[C]ourts attempt to reconcile inconsistent contract terms and give effect to each term."). Furthermore, because the merger clause refers specifically and only to "any Franchise Agreement(s)," this provision was most likely intended to prevent extinguishment by a later franchise agreement. The Court accepts KFCC's proffered interpretation of the merger clause as ensuring that the Reinstatement Agreement would not be subsumed by the New Franchise Agreement. The Court cannot conceive of a better way for the parties to express their intent that the provisions in the Reinstatement Agreement remain after the New Franchise Agreement was subsequently executed. Thus, the Court concludes the presence of the merger clause in the Reinstatement Agreement indicates that the parties intended the two documents to operate together, and the merger clause helps to define that interaction.

### 4. Assignability provision in the New Franchise Agreement

Because the New Franchise Agreement is assignable, the bankruptcy court determined that it was separate from the Reinstatement Agreement. The New Franchise Agreement allows

15

the franchise agreement to be assigned to a subsequent purchaser with KFCC's consent. (New Franchise Agreement section 16, ECF No. 1 Doc. 15 at 31-33) KFCC argues that this indicates that the New Franchise Agreement is part of a larger reinstatement contract because its consent is required prior to any assignment of the New Franchise Agreement. *See In re Buffets Holdings, Inc.*, 387 B.R. 115, 123 (Bankr. D. Del. 2008). In *Buffets Holdings*, the parties had one master lease that contained numerous individual leases. The master lease agreement allowed assignment of the individual leases only with the landlord's approval. *Id.* The requirement of approval led the court to conclude that the leases were intended to be integrated except in specific circumstances that required separate approval. *Id.* Although the agreements at issue here are different from those in *Buffets Holdings* because the Reinstatement Agreement is not a "master" agreement, the assignment provision at issue similarly requires the approval of KFCC prior to any transfer.[4]

It is true that the assignment provision indicates that the New Franchise Agreement can be a stand-alone contract—but not as between the contracting parties. The express ability to assign the New Franchise Agreement comports perfectly with the parties' intent as stated in the Addendum. Debtors were supposed to sell the Outlets. And the Outlets are far more saleable if a franchise agreement, unburdened by references to the prior owners, can be transferred and assumed pursuant to the sale. The assignment provision facilitates the sale of the Outlets. The

---

[4]     KFCC argues for the first time on appeal that the Reinstatement Agreement is a "master" agreement. (*See* New Franchise Agreement section 20.5, ECF No. 1 Doc. 15 at 35) Ordinarily the Court will not consider arguments raised for the first time on appeal, but the Court can consider new arguments if they are a subset of a party's more general arguments and no new evidence is presented on appeal. *Hartford Fire Ins. Co. v. Clark*, 562 F.3d 943, 946 (8th Cir. 2009). The Court declines to consider KFCC's new argument. There is no evidence in the record regarding "master" agreements, and this argument is not clearly a subset of KFCC's more general argument that focuses on the language of the documents.

necessity of KFCC approval of a contemplated sale weighs in favor of viewing the documents as one agreement.

### 5. Cross-default provisions

KFCC argues that the presence of a cross-default provision in the Letter Agreement indicates that the agreements should be interpreted to be one contract. A cross-default clause in an agreement is "inherently suspect" in the context of bankruptcy. *Lifemark Hosps., Inc. v. Liljeberg Enters. (In re Liljeberg Enters.)*, 304 F.3d 410, 445 (5th Cir. 2002). But the clause should be enforced where the non-debtor would not have entered into the bargain without the cross-default provision. *Id.* (citing *Kopel v. Campanile (In re Kopel)*, 232 B.R. 57, 66 (Bankr. E.D.N.Y. 1999).

The Letter Agreement states: "Franchisee agrees that the following events shall constitute an event of default under any Outlet's Franchise Agreement." (Letter Agreement 2, ECF No.1 Doc. 15 at 60) The paragraph goes on to list numerous ways franchisees can default on the agreement that are not present in the New Franchise Agreement. Additionally, the final paragraph of the Letter Agreement provides that: "your failure to meet any of the above requirements will result in immediate termination of the Reinstatement Agreements, this Letter Agreement and the Franchise Agreements for the Outlets." (Letter Agreement 3, ECF No.1 Doc. 15 at 61) These clauses in the Letter Agreement plainly state that failure to comply with the requirements in the Reinstatement Agreement, Addendum, and Letter Agreement result in termination of the New Franchise Agreement. The parties unambiguously expressed their intention that but for the provisions in the Reinstatement Agreement, Addendum, and Letter Agreement there would be no reinstatement of the franchise agreement. KFCC would not have entered into the New Franchise Agreement without the Reinstatement Agreement and the Letter

Agreement complete with its cross-default provisions. This is a strong indication that these documents form one indivisible contract. *See In re T & H Diner, Inc.*, 108 B.R. 448, 454 (D.N.J. 1989) (finding cross-default provision indicated a lease of land and sale of the business operating on that land were indivisible agreements).

### 6.      Difference in the termination date

Debtors focus on the difference in the termination date of the New Franchise Agreement in the various documents. The bankruptcy court stated that this difference was confusing to reconcile. (Bankr. Proceedings Tr. 57:24, July 27, 2011) The Addendum and Letter Agreement state the New Franchise Agreement terminates on August 1, 2010. But the New Franchise Agreement itself contains an expiration date twenty years after the date of execution of the original (terminated) franchise agreement for each Outlet. The difference in dates was intentional. The incorporation clause of the Reinstatement Agreement varies the date in the New Franchise Agreement to coincide with the expiration of the original franchise agreement for each Outlet. The parties' contemplation of the expiration date is also evidenced in the New Franchise Agreements by the striking through of the standard twenty-year term and insertion of the correct expiration date. This difference was deliberate, and it can be explained by looking at the dates in the context of the contract as a whole.

The plain language of the Addendum states that the purpose of the contract is for the sale of the Outlets. Any sale would include the transfer of a franchise agreement. Debtors' rights under the original franchise agreements extended twenty years past the date of execution. Thus, Debtors—pursuant to the Reinstatement Agreement—have a franchise agreement extending to that date that they can sell. The assignability clause in the New Franchise Agreement allows for such a transfer. Sale of a franchise agreement that expires on August 1, 2010, the same day set as

the deadline for sale of the Outlets, would make no sense. Although the dates are clearly different, contractual provisions must be interpreted in context and in light of the contract as a whole. *See Newland*, 705 S.W.2d at 919. When the different dates are considered in light of the purpose stated in the Addendum, the alteration of the date in the incorporation clause in the Reinstatement Agreement, and the assignment provision in the New Franchise Agreement, the difference exists for a sensible reason. The New Franchise Agreement is as marketable to a third-party as was the first franchise agreement; it is unencumbered by references to Debtors. The franchise agreements—old and reinstated—contemplate that a new owner will receive an assignment of the franchise. The Kentucky Fried Chicken Franchise Agreement at section 16 contains the detailed requirements for assignment of the agreement to include the prior written consent of KFCC. The Court does not conclude that the different termination dates are irreconcilable. Rather, the parties had to include different dates in order to effectuate a contract for the operation of the Outlets while Debtors attempted to negotiate their sale.

### 7.    Consideration

Debtors point to the different consideration required by the Reinstatement Agreement and New Franchise Agreement as an indication that they are separate contracts. Separate consideration is an indication of separate agreements. *Bitzer v. Moock's Ex'r & Trustee*, 271 S.W.2d 877, 879 (Ky. 1954). Debtors argue consideration for the New Franchise Agreements includes payment of royalties and advertising costs for the use of KFCC trademarks. They allege the Reinstatement Agreement requires different consideration in the form of payments of lump sums and execution of promissory notes with interest in exchange for the continued ability to operate the franchises. The Reinstatement Agreement waives the requirement of an initial franchise fee—a normal part of a new franchisee's consideration for a franchise agreement.

Debtors defaulted on obligations under their franchise agreements and KFCC exercised its right to terminate the franchises. Consideration to reinstate the terminated franchises has to be more than what undergirded the original franchise agreements. Debtors demonstrated themselves incapable of timely paying royalties and advertising costs. Even if the documents are viewed as having separate consideration, in the context of Debtors' relationship with KFCC this is not an indication that the New Franchise Agreement is separate from the Reinstatement Agreement. *See Buffets Holdings*, 387 B.R. at 121 ("The ability to apportion the consideration to different parts of the contract is one factor to be considered in determining the intent of the parties but it is not conclusive.").

### B. Resolving ambiguities in the contractual language

An ambiguity exists where there is "more than one different, reasonable interpretation." *Cent. Bank & Trust Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981). In the face of ambiguity, the Court may consider extrinsic evidence such as the situation of the parties, the subject matter of the agreement, and the circumstances under which it was executed. *Frear v. P.T.A. Indus*., 103 S.W.3d 99, 106 (Ky. 2003) (citing *Whitlow v. Whitlow*, 267 S.W.2d 739, 740 (1954)). Although the Court discerns no ambiguity in the contract language, the Court addresses the Debtors' arguments. Even if extrinsic factors are considered, they offer further support for the proposition that the documents form a single contract.

### 1. Common sense

In determining the intent of the parties, the Court should consider "the common sense of the situation." *Eades*, 161 S.W.2d at 922. One relevant factor is whether the party opposing divisibility would have entered into the transaction without the agreement to be excluded. *See Knight*, 233 S.W.2d at 971. In this case, Debtors breached their original franchise agreements by

failing to pay royalties and advertising costs due to KFCC. Debtors' breaches triggered the negotiations between the parties for the Reinstatement Agreement. The agreement the parties reached gave Debtors the chance to try to sell the Outlets while at the same time, among other requirements, upgrading the locations and signing promissory notes for the outstanding debt owed to KFCC. The parties agreed to include New Franchise Agreements in the transaction. And these New Franchise Agreements were identical to the original franchise agreements to include the same termination date. By signing New Franchise Agreements with an assignment clause, Debtors would have the ability to transfer the license to use KFCC's trademarks in any sale. Why would the parties enter into identical franchise agreements when Debtors had already proven they were incapable of performing under the original franchise agreements? KFCC would not receive the benefit of its bargain if the agreement could be separated such that a stand-alone contract existed which only included terms identical to those of a contract just breached by the Debtors. It may be that as between a hypothetical third-party buyer and KFCC, the New Franchise Agreement is a stand-alone contract. But between KFCC and Debtors—the contracting parties—the New Franchise Agreement is inextricably linked to the Reinstatement Agreement. *See Koppers Co. v. Asher Coal Mining Co.*, 11 S.W.2d 114, 115 (Ky. 1928) ("Contracts must be construed from the standpoint of the parties."). The entire transaction imagined by the parties was based on the Reinstatement Agreement. The New Franchise Agreement was a necessary addition to make the Outlets marketable to third-party purchasers in order to effectuate the sale contemplated in the Reinstatement Agreement. Common sense dictates that, as between Debtors and KFCC, the New Franchise Agreement is not an independent agreement but instead is wholly dependent on the Reinstatement Agreement provisions.

Debtors argue that the New Franchise Agreement cannot be a separate agreement for some people and not others. But if this is true, the contract imagined by the parties would be impermissible. In Kentucky, parties enjoy great freedom of contract. *United Servs. Auto. Ass'n v. ADT Sec. Servs., Inc.*, 241 S.W.3d 335, 342 (Ky. Ct. App. 2006) (stating "there is a broad public policy of freedom of contract in Kentucky"). Unless the terms of the contract are illegal or contrary to public policy, parties may structure their contracts to suit their intentions. *See Hennis v. B. F. Goodrich Co.*, 349 S.W.2d 680, 682 (Ky. 1961) ("'[C]ourts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain.'" (quoting *Wallihan v. Hughes*, 82 S.E.2d 553, 558 (Va. 1954))); *Kirwan's Adm'r v. Citizens' Union Nat'l Bank*, 299 S.W. 1104, 1106 (Ky. 1927) (stating "general policy to permit freedom of contract between individuals where the public interest is not clearly violated"). Combining a Reinstatement Agreement and a New Franchise Agreement for the purposes of the contracting parties, with the understanding that the New Franchise Agreement can later be sold to a third-party as a stand-alone agreement is neither illegal nor contrary to public policy. Indeed it benefits both Debtors and KFCC—or at least it did at the time the contract was executed—and would benefit a third party purchaser. The inclusion of a New Franchise Agreement gave Debtors more marketable Outlets to sell, thereby increasing the likelihood of a sale. Public policy favors legitimate commercial activity, and the sale of the Outlets furthers this policy interest. The sale of the Outlets was also in the financial interests of both KFCC and Debtors as it would limit the financial harm to both parties.

Debtors urge the Court to consider the public policy reasons behind the applicable Bankruptcy Code provisions. The intent of the parties is the relevant inquiry in determining whether the documents make one indivisible contract. The relevant time of the parties' intent is

when they entered into the contract, not at the time Debtors filed for bankruptcy. Thus, bankruptcy policy has no bearing on the analysis of the contracting parties' intent. Bankruptcy policy does not permit the parties or the courts to rewrite contracts in order to facilitate reorganization. *See Bistrian v. Easthampton Sand & Gravel Co. (In re Easthampton Sand & Gravel Co.)*, 25 B.R. 193, 199 (Bankr. E.D.N.Y. 1982) ("[T]his Court can discern no federal policy which requires severance of a lease condition solely because it makes a debtor's reorganization more feasible.").

Even if bankruptcy policy were relevant, several bankruptcy courts have similarly resolved issues of multiple documents related to a franchisee. *See, e.g.*, *In re FPSDA I, LLC*, 450 B.R. 392 (Bankr. E.D.N.Y. 2011) (concluding leases and franchise agreements to be integrated where they were signed contemporaneously, they contained a cross-default provision, they only allowed use of the leased property for the operation of the franchise, and the parties would not have entered into the lease without the franchise agreement); *Buffets Holdings*, 387 B.R. at 122-23 (determining that individual leases were not divisible from master leases even though the consideration could be apportioned because, in part, the individual leases could not be merged together, the individual leases could not be severed without the landlord's approval, a default on an individual lease could constitute a default of the master lease, and rent was due jointly and severally by the tenants);  *In re Twin City Power Equip., Inc.*, 308 B.R. 898, 901 (Bankr. C.D. Ill. 2004) (determining that a dealership agreement and financing agreement were indivisible because they were executed at the same time and the extension of financing for the purchase of inventory was central to both agreements); *In re JLS Shamus, Inc.*, 179 B.R. 294, 296 (Bankr. M.D. Fla. 1995) (stating franchise agreements and promissory notes were part of the same contract because the notes included the defaults under the other franchise documents and the

notes were essential to the bargain in light of the debtor's poor history of making payments and operating the franchises); *In re Karfakis*, 162 B.R. at 725 (holding a lease and franchise agreement were "inextricably interwoven" and constituted a single contract because they were coterminous; contained cross-default provisions; one agreement was of no utility without the other; and were executed on the same date). Although different combinations of factors and indications of indivisibility were present in these cases, none of these courts concluded that treating the multiple documents as one contract was a violation of bankruptcy policy.

The contract structured by the parties is a commonsense method to accomplish their plainly stated intention of having Debtors operate the Outlets for the limited purpose of sale.

### 2.  Doctrine of *contra proferentem*

Debtors contend that any ambiguities in the agreement should be construed against KFCC, the drafting party, under the doctrine of *contra proferentem. See McMullin v. McMullin*, 338 S.W.3d 315, 322 (Ky. Ct. App. 2011) (stating that the doctrine of *contra proferentem* has long been followed in Kentucky). But the doctrine is only applied to determine the parties' intent as a last resort. *Elliott v. Pikeville Nat'l Bank & Trust Co*., 128 S.W.2d 756, 760 (Ky. 1939). It is unnecessary here, where the parties' intent is clear from the documents. There are no allegations that Debtors were not sophisticated, and the record states that the parties engaged in "extended negotiations" to arrive at the Reinstatement Agreement and New Franchise Agreement. (Debtors' Mem. Opp'n to KFCC's Mot. to Dismiss 4) The parties entered into the agreement knowingly and with the same mutually beneficial intent—that the franchises be sold and that the reinstated Franchise Agreements be transferred to the purchaser. There is no need to resort to *contra proferentem.*

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT: The August 25, 2011 Order of the Bankruptcy Court is REVERSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  January 3, 2012

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge